**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: ____________________

DS HEALTHCARE GROUP, INC. and
MEDITAGO HOLDINGS LLC,
Plaintiffs,
v.
THE INDIVIDUALS, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"
Defendants.
________________________________________/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs, DS HEALTHCARE GROUP, INC. ("DS Healthcare") and MEDITAGO HOLDINGS LLC ("MEDITAGO") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby sue Defendants, the individuals, partnerships, business entities, and unincorporated associations identified on Schedule "A" hereto (collectively, "Defendants"), who are promoting, advertising, offering for sale, and selling counterfeit hair-care products bearing Plaintiffs' registered NANOXIDIL trademark and infringing Plaintiffs' SPECTRAL family of trademarks, including SPECTRAL.DNC, through the Internet-based e-commerce stores, domain names, and social media accounts identified on Schedule "A" (the "Defendant Internet Stores"). In support of their claims, Plaintiffs allege as follows:

**JURISDICTION AND VENUE**

1. This is an action for federal trademark counterfeiting and infringement and for false designation of origin and unfair competition pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1125(a); for relief pursuant to The All Writs Act, 28 U.S.C. § 1651(a); and for common law unfair competition and common law trademark infringement. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a)–(b).

This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2. Defendants are subject to personal jurisdiction in this district pursuant to Section 48.193(1)(a)(2), *Florida Statutes*, because Plaintiffs' trademark counterfeiting and infringement claims arise out of Defendants committing tortious acts within this district. Trademark infringement committed through a website that causes injury in Florida, including through sales to Florida consumers, constitutes a tortious act within Florida. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013).

3. In particular, Defendants direct business activities toward, and conduct business with, consumers throughout the United States, including within the State of Florida and this district, by soliciting, advertising, offering for sale, and selling counterfeit products through fully interactive e-commerce stores that are accessible in Florida and in this district, that accept orders and payment in U.S. dollars from Florida consumers, and that offer shipping to Florida addresses.

4. Defendants also target consumers in the United States, including Florida and this district, through paid advertising on Meta Platforms (Facebook and Instagram) and TikTok, in both English and Spanish, directing consumers in the United States and Mexico to the Defendant Internet Stores.

5. On October 1, 2026, Plaintiffs' representative, located in Miami-Dade County, Florida, placed an order through the Defendant Internet Store located at https://tryviareline.shop (Order #11175, confirmation no. LY94IKFFM) for three (3) 60 ml units of a product advertised as "Viareline Spectral Men's™ Nanoxidil al 5%" and one "Dermaroller Micro-Activador Pro Viareline™," for a total of $69.99 USD, designating shipping and billing addresses at 1000 NW

57th Ct, #650, Miami, Florida 33126. Defendants accepted the order, processed payment, and sent an order-confirmation email from the address hello@godetica.com confirming the order for shipment to Miami, Florida via “Envío Prioritario Exprés.” On October 5, 2026, a shipping record was created for the order under Parcll tracking no. YT2627800708451655, routed from China to the United States; as of October 13, 2026, that tracking record showed only “Shipment information received,” with no carrier scan. The product has not been delivered.

6. Defendants’ counterfeiting and infringement have caused injury in Florida and in this district by virtue of the Defendant Internet Stores’ accessibility in Florida, by virtue of actual sales and shipments of counterfeit products into Florida and this district, and because Plaintiffs are headquartered in, and suffer the harm caused by Defendants in, this district. Plaintiffs’ claims arise directly out of Defendants’ contacts with this district.

7. Defendants have purposefully availed themselves of the privilege of conducting business in Florida, and the exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

8. Alternatively, this Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiffs’ claims arise under federal law; upon information and belief, Defendants are foreign individuals or entities not subject to jurisdiction in any state’s courts of general jurisdiction; and Defendants’ contacts with the United States as a whole, including their targeting of U.S. consumers through advertising and sales, render the exercise of jurisdiction consistent with the United States Constitution and laws.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. § 1391(c)(3) because, upon information and belief, Defendants are not residents of the

United States and therefore may be sued in any judicial district. Defendants are, upon information and belief, aliens engaged in activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping counterfeit products into this district.

**THE PLAINTIFFS**

10. Plaintiff MEDITAGO is a Delaware limited liability company with its principal place of business located at 1395 Brickell Avenue, Suite 800, Miami, Florida 33131. MEDITAGO is the owner of record of various trademarks in the field of haircare, skincare, and cosmetics, including the distinctive NANOXIDIL, SPECTRAL-formative, DS LABORATORIES, DS LABS, and REVITA trademarks. MEDITAGO's legacy registrations were assigned to MEDITAGO by an assignment recorded with the United States Patent and Trademark Office on April 3, 2020 (Reel/Frame 6909/0155), and its newer registrations were filed in MEDITAGO's own name.

11. Plaintiff DS HEALTHCARE GROUP, INC., d/b/a DS Laboratories, is an active Florida corporation (Florida Department of State Document No. P07000012637, filed January 26, 2007) with its principal place of business at 4918 SW 74th Court, Miami, Florida 33155. DS HEALTHCARE GROUP, INC. manufactures, sells and distributes haircare, skincare, and cosmetic products (the "Products") out of its South Florida headquarters, under a worldwide exclusive license from Plaintiff MEDITAGO to commercialize MEDITAGO trademarks.

12. Among Plaintiffs' Products is the SPECTRAL line of hair-care products, each sold under a mark combining SPECTRAL with a period and a product-specific suffix (e.g., SPECTRAL.DNC, SPECTRAL.CSF, SPECTRAL.F7, SPECTRAL.UHP, SPECTRAL.BRD, SPECTRAL.BROW, SPECTRAL.LASH, SPECTRAL.CBD). Plaintiffs' flagship men's hair-density product, SPECTRAL.DNC-N, is a hair serum formulated with Plaintiffs' proprietary

NANOXIDIL ingredient at a 5% concentration (together with Plaintiffs' other SPECTRAL products, the "Genuine Spectral Products").

13. Plaintiffs' trademarked Products are sold through various channels of trade within the United States and the State of Florida, including in this district, and in Mexico.

14. Defendants, through the sale and offer to sell counterfeit versions of Plaintiffs' branded products, are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and thereby causing Plaintiffs harm within this jurisdiction.

**THE DEFENDANTS**

15. Defendants are individuals, partnerships, and/or business entities of unknown makeup, each of whom, upon information and belief, resides or operates in foreign jurisdictions, including, upon information and belief, the People's Republic of China and/or the Republic of India. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. Defendants target their business activities toward consumers throughout the United States, including within this district, through the operation of the Defendant Internet Stores identified on Schedule "A," including the Shopify-hosted store "Viareline" at https://tryviareline.shop (Shopify shop ID 86785229077; platform domain sb8urf-1y.myshopify.com), the corresponding listing on Shopify's Shop app (https://shop.app/products/9523932725525/viareline-spectral-mens-nanoxidil-al-5), additional domain names pointing to or associated with the same store, and associated social media and video accounts used to drive traffic to those stores.

17. The Viareline store offers checkout in U.S. dollars and numerous other currencies, advertises shipping worldwide, and accepts payment through Shop Pay, PayPal, Apple Pay, Google Pay, and major credit cards (Visa, Mastercard, American Express, Discover, and Diners Club). As of October 5, 2026, the store offered at least two listings for the Counterfeit Products:

"Viareline Spectral Men's™ Nanoxidil al 5%" (product ID 9523932725525, listed at $29.95) and "Viareline™| Spectral Men's Nanoxidil al 5%" (product ID 9616313286933, listed at $31.95).

18. Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiffs' trademarks as described herein.

19. Defendants go to great lengths to conceal their identities. The domain name tryviareline.shop was registered on March 31, 2026 through GoDaddy.com, LLC, and its registrant is not publicly identified. The Defendant Internet Stores identify a U.S. telephone number, +1 813-322-6233, and an address at 30 N Gould St, Ste N, Sheridan, Wyoming 82801, which, upon information and belief, is a commercial registered-agent address used by a large number of unrelated entities, together with a business identification number, "Biz # 2025-001764542." The store's policy pages also list the email address info@tryviareline.shop and a tax identification number, 32-0827500.

20. Defendants send customer communications from the email address hello@godetica.com, using a domain (godetica.com) different from the storefront domain, further obscuring the identity of the persons responsible. Upon information and belief, godetica.com was registered on December 29, 2025 through Tucows with privacy protection, lists Shopify as reseller, and, as of October 6, 2026, resolved to an IP address within Shopify's hosting infrastructure (23.227.38.70), although no website could be reached at godetica.com on October 5 or October 6, 2026.

21. Upon information and belief, Defendants operate or control additional domain names associated with the same store, including getviareline.com, which redirects to tryviareline.shop and reports the same Shopify shop ID, 86785229077. Other domain names

connected to the store, including viareline.us and tryviareline.com, have already been taken offline or changed, which shows how readily Defendants can move their storefronts.

22. Upon information and belief, Defendants promote the Counterfeit Products through, among other accounts, (a) the TikTok account "@viareline" (https://www.tiktok.com/@viareline), whose biography advertises worldwide shipping and a purchase link, and which, as of October 6, 2026, had approximately 16,500 followers, 27 videos, and 568,200 likes; (b) the Instagram account "@davidsterling.nanoxidil," a "David Sterling | Nanoxidil" persona that, as of October 5, 2026, had approximately 31,000 followers and 123 posts; and (c) the YouTube channel "SCAM VIEW" (@scamView, channel ID UCT8ok63BffzHAu18aFJuN9g), which, upon information and belief, poses as an independent third-party "reviewer" while promoting a network of websites selling knock-off versions of popular branded products, including a video titled "Viareline Spectral Men's Review: Nanoxidil 5% Serum Legit or Scam?" (https://www.youtube.com/watch?v=nUTFZiA4hV8).

23. Upon information and belief, Defendants also sell the same counterfeit serum through mirror Shopify stores operated from Colombia — TENDEARTE (tendearte.com; Shopify shop ID 65384448168), Luva (luvafy.com; Shopify shop ID 60088352849), and RojuCol (rojucol.com; Shopify shop ID 80887939352) — each offering the same "Sérum Avanzado de Densidad Capilar con Nanoxidil 5%" listing at COP 79,900, using the same product image files, each labeled with the alternative text "Viareline™ Spectral Men's Nanoxidil al 5%," the name of the Counterfeit Products sold at tryviareline.shop. Each of the three stores lists the United States among the countries to which it ships.

24. Defendants, and persons acting in concert with them, also offer counterfeit and infringing SPECTRAL- and NANOXIDIL-named men's hair serums, shipped from China,

through the Mercado Libre México and Mercado Libre Colombia marketplaces, including listings titled "Sérum Capilar Nutritivo Densidad Spectral Nanoxidil 5 60 Ml," "Sérum Densidad Capilar Spectral Labs Hombre No Graso 5pcs," and "Ydu T 2026 Sérum Spectral Dnc-n Para Hombre" (displaying "CARVENCHY SPECTRAL MEN'S" packaging marked "Nanoxidil 5%"). These sellers are identified as Defendants Nos. 12–14 on Schedule "A."

25. Upon information and belief, Defendants have registered, established, or purchased, and maintain, the Defendant Internet Stores, and may have provided false and/or misleading information to the platforms, registrars, and payment processors through which they operate. Upon information and belief, Defendants will continue to register or acquire new domain names, storefronts, seller aliases, and social media accounts for the purpose of selling counterfeit goods bearing Plaintiffs' trademarks unless preliminarily and permanently enjoined.

26. Defendants' Internet-based storefronts, domain names, social media accounts, advertising accounts, and associated payment accounts are essential components of Defendants' counterfeiting scheme and are the means by which Defendants further their scheme and cause harm to Plaintiffs.

**JOINDER OF DEFENDANTS**

27. Joinder of Defendants is proper under Federal Rule of Civil Procedure 20(a)(2) because Plaintiffs' right to relief against Defendants arises out of the same transaction, occurrence, or series of transactions or occurrences, and common questions of law and fact will arise in this action.

28. Specifically, each Defendant Internet Store promotes and sells the same counterfeit product — "Viareline Spectral Men's™ Nanoxidil al 5%" — using the same product name, the same counterfeit of Plaintiffs' registered NANOXIDIL mark and the same misappropriation of Plaintiffs' SPECTRAL family of marks, the same or substantially similar

images, product descriptions, and promotional videos, and the same pricing and bundle offers (e.g., "COMPRAR 2 + 1 GRATIS").

29. The Defendant Internet Stores are interconnected: the Shop app listing is a product page for the same Shopify store operating at tryviareline.shop; orders placed at tryviareline.shop are confirmed from hello@godetica.com; and the Instagram, YouTube, TikTok, and Meta advertising accounts identified on Schedule "A" direct consumers to the same storefront. Upon information and belief, the Defendant Internet Stores are operated by a single individual or a coordinated group acting in concert, or are otherwise logically related.

30. Upon information and belief, the Defendant Internet Stores share common technical and operational infrastructure, including: (a) a single Shopify shop ID (86785229077) shared by tryviareline.shop, getviareline.com, and sb8urf-1y.myshopify.com; (b) the same TikTok tracking pixel (D7TO9LJC77UEEEGUISO0) and Meta (Facebook) tracking pixel (3487907021348300) embedded in the storefront, which link the store to the same TikTok and Meta advertising accounts; (c) shared contact details (+1 813-322-6233; info@tryviareline.shop; 30 N Gould St, Ste N, Sheridan, WY 82801; "Biz #" 2025-001764542) appearing on the store's policy pages, getviareline.com, and the Shop app listing; and (d) identical product image files labeled "Viareline™ Spectral Men's Nanoxidil al 5%" on the Colombian mirror stores TENDEARTE, Luva, and RojuCol.

31. Defendants' true identities and the full scope of their network are presently unknown to Plaintiffs, and Plaintiffs will seek leave to amend Schedule "A" as additional Defendants and Defendant Internet Stores are identified through expedited discovery.

**COMMON ALLEGATIONS OF FACT**

32. Plaintiff MEDITAGO is the owner of various trademarks in the field of haircare, skincare, and cosmetics, including the distinctive NANOXIDIL mark, the SPECTRAL family of

marks, and the DS LABORATORIES, DS LABS, and REVITA house marks, which are generally marketed under the distinctive "DS Laboratories" label.

33. MEDITAGO is the owner of record of multiple trademark registrations issued by the United States Patent and Trademark Office ("USPTO"), including the valid and subsisting registrations identified on Schedule "B" hereto, which include the registered trademarks that are affected by the actions of the Defendants named herein. Chief among them are NANOXIDIL, U.S. Reg. No. 6,694,052 (registered April 5, 2022) for non-medicated hair serums in International Class 3, and SPECTRAL.DNC, U.S. Reg. No. 3,510,924 (registered October 7, 2008) for hair-loss preparations in International Class 3, which registration is incontestable pursuant to 15 U.S.C. § 1065.

34. Based upon its distribution licenses, Plaintiff DS HEALTHCARE GROUP, INC. has expended significant resources in developing, marketing, advertising, and otherwise promoting its brand and trademarks, including through a network of affiliated content creators on TikTok and other social media platforms.

35. Plaintiffs have carefully monitored and policed the use of their trademarks and have never assigned or licensed their trademarks to any Defendant in this matter. Defendants are not, and have never been, authorized distributors or licensees of Plaintiffs.

36. Plaintiffs identified Defendants' storefront at https://tryviareline.shop/products/nanoxidil no later than May 7, 2026. Defendants are promoting, advertising, offering for sale, and selling counterfeit products bearing Plaintiffs' registered NANOXIDIL mark and imitating Plaintiffs' SPECTRAL family of marks and SPECTRAL.DNC-N product, under the name "Viareline Spectral Men's™ Nanoxidil al 5%" (the "Counterfeit Products"), within the United States and Mexico, without Plaintiffs' authorization, through the

Defendant Internet Stores, including https://tryviareline.shop/products/nanoxidil. Plaintiffs' platform and registrar takedown efforts following the May 2026 identification did not stop Defendants. Screenshots of the Defendant Internet Stores and listings are attached as Composite Exhibit "2" hereto.

37. Defendants use the word NANOXIDIL — identical to Plaintiffs' registered NANOXIDIL mark — on and in connection with hair serums, the very goods identified in Plaintiffs' NANOXIDIL registration, advertising their product as "Nanoxidil al 5%," the same 5% concentration as Plaintiffs' genuine SPECTRAL.DNC-N serum. Defendants pair that counterfeit mark with the term "Spectral," presented as "Spectral Men's™," which imitates Plaintiffs' SPECTRAL family of marks and in particular SPECTRAL.DNC, the registered mark for Plaintiffs' men's hair-loss serum. Plaintiffs do not hold a registration for SPECTRAL alone or for SPECTRAL MEN'S; Plaintiffs' rights in SPECTRAL arise from their registered SPECTRAL-formative marks, their family of SPECTRAL marks, and their common-law use of SPECTRAL as the common, recognized element of that family. Defendants also bundle a free "Dermaroller Micro-Activador Pro Viareline™."

38. Defendants promote the Counterfeit Products through paid advertising on Meta Platforms (Instagram and Facebook) and TikTok.

39. Defendants' promotional content has reached a substantial audience. Upon information and belief, videos posted on the Instagram account "davidsterling.nanoxidil" to promote the Counterfeit Products had, as of October 1, 2026, accumulated approximately 2.1 million views (https://www.instagram.com/reel/DbUHIzsxPCd/), 1 million views (https://www.instagram.com/reel/DbBq27eRqBC/), and 559,000 views (https://www.instagram.com/reel/DaLxPlSRq9e/).

40. The Counterfeit Products are not genuine. Plaintiffs did not manufacture, inspect, approve, or package the Counterfeit Products, and the Counterfeit Products are not subject to Plaintiffs' quality-control standards. The actual composition, concentration of active ingredients (including any minoxidil or "Nanoxidil"), purity, manufacturing conditions, and labeling of the Counterfeit Products are unknown.

41. Upon information and belief, Defendants operate a network of websites that copy the product-detail pages and user-generated content of popular branded products to sell low-quality knock-offs, and some consumers who order from Defendants may receive no product at all or a product of unknown origin. For example, upon information and belief, the same SCAM VIEW YouTube channel (@scamView) that promotes the Counterfeit Products has posted a similar purported "review" video promoting a knock-off version of another popular branded product (https://www.youtube.com/watch?v=tXZZTJRuWP4).

42. Because hair-loss products are applied to the scalp, often daily and for extended periods, consumers who purchase the Counterfeit Products believing them to be Plaintiffs' Genuine Spectral Products are exposed to a product of unknown composition and safety, and any adverse reaction or lack of efficacy will be wrongly attributed to Plaintiffs, eroding the goodwill symbolized by Plaintiffs' marks.

43. Defendants' infringement is knowing and willful. Defendants deliberately adopted Plaintiffs' NANOXIDIL mark, the SPECTRAL element of Plaintiffs' family of marks, and the 5% formulation claim of Plaintiffs' SPECTRAL.DNC-N serum, append a "™" symbol to "Spectral Men's," misappropriate content created for Plaintiffs' own marketing, and conceal their identities. Plaintiffs' efforts to stop the conduct through platform and registrar complaints, beginning no later than May 2026, have not stopped Defendants. In October 2026, Meta Platforms,

Inc. removed one Facebook page that Plaintiffs had reported, but Defendants' storefronts and their other accounts remain active. Defendants operate a network of storefronts, domain names, and social-media and marketplace accounts that can quickly shift to new pages and accounts, so platform-by-platform takedowns cannot stop the infringement or preserve Defendants' proceeds.

44. Defendants' conduct has caused, and continues to cause, lost sales of the Genuine Spectral Products in the United States and Mexico and actual consumer confusion, including consumers contacting Plaintiffs to ask whether Defendants' products are DS Laboratories products.

45. Defendants' checkout pages display Shop Pay, PayPal, Apple Pay, Google Pay, and major credit cards as accepted payment methods. Upon information and belief, Defendants process payments for the Counterfeit Products through Shopify Inc. and its payment affiliates (including Shopify Payments and Shop Pay) and PayPal, Inc., and may also use Stripe and other payment processors and financial institutions (collectively, the "Financial Accounts"). Defendants are likely to transfer or conceal the proceeds of their counterfeiting outside the jurisdiction of this Court if given notice of this action.

46. The Defendants, through the sale and offer to sell counterfeit versions of Plaintiffs' branded products, are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction. Plaintiffs are seeking injunctive and other equitable relief as a result of the actions of the Defendants. An Ex Parte Motion for Entry of Temporary Restraining Order, Asset Restraint, and Expedited Discovery, and Incorporated Memorandum of Law, is being filed contemporaneously with this Complaint.

47. All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

**GENERAL ALLEGATIONS**

48. Plaintiff MEDITAGO is the owner of record of the trademark registrations identified on Schedule "B" hereto, issued by the USPTO (collectively, the "Marks"). True and correct copies of the Certificates of Registration for the Marks are attached as Composite Exhibit "1" hereto. The registrations constitute prima facie evidence of the validity of the Marks, MEDITAGO's ownership of the Marks, and MEDITAGO's exclusive right to use the Marks in commerce. 15 U.S.C. §§ 1057(b), 1115(a). The registrations for SPECTRAL.DNC, SPECTRAL.BRD, SPECTRAL.BROW, DS LABORATORIES (Reg. No. 3,460,674), and the crown design (Reg. No. 4,022,680) are incontestable under 15 U.S.C. § 1065 and are therefore conclusive evidence of validity, ownership, and MEDITAGO's exclusive right to use those marks in commerce, subject only to the defenses enumerated in 15 U.S.C. § 1115(b).

49. The Marks have been used in interstate commerce to identify and distinguish Plaintiffs' products for an extended period of time and serve as a symbol of Plaintiffs' quality, reputation, and goodwill. Plaintiffs have used SPECTRAL as the common, dominant element of a family of SPECTRAL-formative marks for hair-care products since at least 2008, and the consuming public recognizes SPECTRAL, when used on hair-care products, as identifying Plaintiffs as the source of each member of the family. The Marks are well known, and Plaintiffs have expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Marks.

50. Plaintiffs have extensively used, advertised, and promoted the Marks in the United States and abroad in association with the sale of quality products.

51. The Marks have achieved secondary meaning as identifiers of quality goods as a result of Plaintiffs' advertisement, promotion, and sale of such goods thereunder.

52. As a result of Plaintiffs' efforts, members of the public readily identify merchandise bearing or sold under the Marks as being quality products originating from Plaintiffs.

53. Defendants are using counterfeits of the Marks in commerce, without Plaintiffs' consent, on and in connection with the advertising, offering for sale, and sale of the Counterfeit Products through the Defendant Internet Stores.

## CAUSES OF ACTION

## COUNT I

## TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

54. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 hereof as if fully set forth herein.

55. This is an action for trademark counterfeiting and infringement against all Defendants based on their use of (a) a counterfeit of Plaintiffs' registered NANOXIDIL mark (Reg. No. 6,694,052), and (b) copies and colorable imitations of Plaintiffs' registered SPECTRAL.DNC mark (Reg. No. 3,510,924) and other SPECTRAL-formative Marks, in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Products.

56. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products bearing and/or using counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe the Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit products.

57. The NANOXIDIL designation used by Defendants is a spurious mark that is identical with Plaintiffs' registered NANOXIDIL mark, and Defendants use it on hair serums — the same goods covered by the NANOXIDIL registration. Defendants' NANOXIDIL designation is therefore a counterfeit mark within the meaning of 15 U.S.C. §§ 1116(d)(1)(B) and 1127, and Defendants' use of it constitutes the use of a counterfeit mark for purposes of 15 U.S.C. § 1117(b) and (c).

58. Defendants' use of "Spectral Men's™" on a men's 5% NANOXIDIL hair-loss serum is a colorable imitation of Plaintiffs' incontestable SPECTRAL.DNC registration and of Plaintiffs' SPECTRAL family of marks, and is likely to cause consumers to believe that Defendants' product is a member of Plaintiffs' SPECTRAL line — specifically, Plaintiffs' SPECTRAL.DNC-N serum.

59. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship, and quality of Defendants' counterfeit goods.

60. Defendants' acts have been committed with knowledge of Plaintiffs' rights in the Marks and with the intent to cause confusion, mistake, and deception, and are therefore willful.

61. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

62. Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

63. Plaintiffs have suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Plaintiffs are entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II**

**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

64. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 hereof as if fully set forth herein.

65. Defendants' Counterfeit Products bear, and are promoted using, marks and product identity that are identical or confusingly similar to Plaintiffs' Marks and the Genuine Spectral Products.

66. Defendants have used in connection with their sale of Counterfeit Products false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such products and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

67. Defendants' use of Plaintiffs' Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' goods and commercial activities by Plaintiffs.

68. Defendants' conduct constitutes false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and has been willful.

69. Plaintiffs have no adequate remedy at law and have sustained, and will continue to sustain, irreparable injury and damages as a result of Defendants' actions.

**COUNT III**

**COMMON LAW UNFAIR COMPETITION**

70. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 hereof as if fully set forth herein.

71. This is an action against all Defendants based on their unauthorized promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing marks that are counterfeits and infringements of Plaintiffs' Marks, in violation of Florida's common law of unfair competition.

72. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing counterfeits of one or more of Plaintiffs' Marks. Defendants are also using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the Internet.

73. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of Plaintiffs' Marks.

74. Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

**COUNT IV**

**COMMON LAW TRADEMARK INFRINGEMENT**

75. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 hereof as if fully set forth herein.

76. This is an action for common law trademark infringement against all Defendants based on their unauthorized promotion, advertisement, offering for sale, and sale of goods bearing

counterfeits and colorable imitations of one or more of Plaintiffs' Marks. Plaintiffs are the owners of all common law rights in and to the Marks, including common-law rights in NANOXIDIL and in SPECTRAL as the recognized element of Plaintiffs' family of SPECTRAL marks for hair-care products.

77. Defendants' infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' counterfeit goods bearing Plaintiffs' Marks.

78. Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs DS Healthcare Group, Inc. and Meditago Holdings LLC demand judgment on all counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of a temporary restraining order, as well as preliminary and permanent injunctions, pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiffs' Marks, or any confusingly similar marks, that are not genuine products of Plaintiffs; from using Plaintiffs' Marks, the NANOXIDIL mark, the SPECTRAL name or any SPECTRAL-formative designation, in any advertising, domain name, storefront, or social media account; from falsely representing that they are affiliated with or authorized by Plaintiffs; from registering or operating any new domain names, storefronts, or accounts for the purpose of selling Counterfeit Products; and from otherwise unfairly competing with Plaintiffs.

b. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiffs' request, the Defendant Internet Stores and any other storefronts, domain names, seller aliases, and social media or advertising accounts being used or controlled by Defendants to sell or promote Counterfeit Products be disabled by Defendants and by the applicable platform operators, administrators, and service providers who are provided with notice of the injunction, including but not limited to Shopify Inc. (including the Shop app and Shop Pay), Meta Platforms, Inc. (Facebook and Instagram), TikTok, and Google LLC (including YouTube).

c. Entry of an order that, upon Plaintiffs' request, the domain name registrars and registries for the domain names identified on Schedule "A" (including tryviareline.shop, getviareline.com, tendearte.com, luvafy.com, and rojucol.com), including but not limited to GoDaddy.com, LLC (tryviareline.shop), Tucows Domains Inc. (getviareline.com and rojucol.com), Hostinger operations, UAB (tendearte.com and luvafy.com), and the .shop registry operator, GMO Registry, Inc., immediately lock and disable the domain names, disclose the true registrant information, and, upon entry of final judgment, transfer the domain names to Plaintiffs' control or cancel them.

d. Entry of an order that, upon Plaintiffs' request, any Internet platform operators, social media and advertising platforms, and/or administrators who are provided with notice of the injunction permanently remove any and all listings, advertisements, posts, videos, and associated images of goods bearing Plaintiffs' Marks via the Defendant Internet Stores, and identify any email addresses, accounts, and payment accounts known to be associated with Defendants.

e. Entry of an order that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or platforms,

including but not limited to Shopify Inc. and its affiliates (including Shopify Payments and Shop Pay), PayPal, Inc., Stripe, Inc., and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Defendant Internet Stores or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

f. Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' counterfeiting, infringing, and unfairly competitive activities, and that such award be trebled pursuant to 15 U.S.C. § 1117(b); or, at Plaintiffs' election before final judgment, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed (including for Defendants' counterfeit use of NANOXIDIL on hair serums and on any other counterfeit mark established through discovery), for Defendants' willful use of counterfeit marks.

g. Entry of an order that Defendants deliver up for destruction all goods, labels, packaging, advertising, and promotional materials bearing Plaintiffs' Marks or any counterfeit thereof, pursuant to 15 U.S.C. § 1118.

h. Entry of an award of Plaintiffs' reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

i. Entry of an award of pre-judgment and post-judgment interest on the judgment amount.

j. Entry of an order for any further relief as the Court may deem just and proper.

Dated: October 23, 2026.

Respectfully submitted,

RECALDE LAW FIRM, P.A.
Attorneys for Plaintiffs
1111 Brickell Avenue, 10th Floor
Miami, FL 33131
Telephone: (305) 792-9100

By: /s/ Rafael Recalde
Rafael Recalde, Esq.
Florida Bar No. 60040
Primary Email: rafael@recaldelaw.com

# SCHEDULE "A"
# DEFENDANTS AND DEFENDANT INTERNET STORES

| Def. No. | Defendant / Seller Alias | Platform / Service | URL / Identifier | Notes |
|---|---|---|---|---|
| 1 | Viareline | Shopify Inc.; GoDaddy.com, LLC (registrar) | https://tryviareline.shop ; /products/nanoxidil (product ID 9523932725525) ; /products/viareline%E2%84%A2-spectral-mens-nanoxidil-al-5 (product ID 9616313286933) | Primary store; Shopify shop ID 86785229077; store information lists Sheridan, Wyoming, USD pricing, and U.S. shipping; test purchase Order #11175 |
| 2 | sb8urf-1y.myshopify.com | Shopify Inc. | https://sb8urf-1y.myshopify.com | Shopify platform domain of shop ID 86785229077; redirects to tryviareline.shop |
| 3 | getviareline.com | Shopify Inc.; Tucows Domains Inc. (registrar) | https://getviareline.com | Redirects to tryviareline.shop; same shop ID 86785229077 |
| 4 | Viareline (Shop app listing) | Shopify Inc. — Shop app / Shop Pay | https://shop.app/products/9523932725525/viareline-spectral-mens-nanoxidil-al-5 | Same product ID 9523932725525 as Def. No. 1 |
| 5 | @viareline | TikTok | https://www.tiktok.com/@viareline | Links to the store |
| 6 | @davidsterling.nanoxidil | Instagram (Meta Platforms, Inc.) | https://www.instagram.com/davidsterling.nanoxidil/ ; reels DbUHIzsxPCd, DbBq27eRqBC, DaLxPlSRq9e | Directs consumers to the store |
| 7 | SCAM VIEW (@scamView) | YouTube (Google LLC) | https://www.youtube.com/@scamView (channel ID UCT8ok63BffzHAu18aFJuN9g) ; https://www.youtube.com/watch?v=nUTFZiA4hV8 | Directs consumers to the store |
| 8 | TENDEARTE | Shopify Inc. (Colombia); Hostinger operations, UAB (registrar) | https://tendearte.com/products/serum-avanzado-de-densidad-capilar-con-nanoxidil-5 | Shop ID 65384448168; same image files as the other Colombian stores, labeled "Viareline™ Spectral Men's Nanoxidil al 5%"; store ships to the U.S.; TikTok pixel D2SH78BC77UF3R355VMG |
| 9 | Luva | Shopify Inc. (Colombia); Hostinger operations, UAB (registrar) | https://luvafy.com/products/serum-avanzado-de-densidad-capilar-con-nanoxidil-5 | Shop ID 60088352849; same image files as the other Colombian stores, labeled "Viareline™ Spectral Men's Nanoxidil al 5%"; store ships to the U.S. |
| 10 | RojuCol | Shopify Inc. (Colombia); Tucows Domains Inc. (registrar) | https://rojucol.com/products/serum-avanzado-de-densidad-capilar-con-nanoxidil-5 | Shop ID 80887939352; same image files as the other Colombian stores, labeled "Viareline™ Spectral Men's Nanoxidil al 5%"; store ships to the U.S. |
| 11 | Meta advertising account(s) associated | Meta Platforms, Inc. | Meta pixel 3487907021348300 | Pixel embedded in the tryviareline.shop page |

| | | | | |
|---|---|---|---|---|
| | with pixel 3487907021348300 | | | source; Meta Ad Library shows eight ads linking to tryviareline.shop |
| 12 | Dsaghh Online (seller of "Sérum Capilar Nutritivo Densidad Spectral Nanoxidil 5 60 Ml") | Mercado Libre México (MercadoLibre, Inc.) | https://www.mercadolibre.com.mx/serum-capilar-nutritivo-densidad-spectral-nanoxidil-5-60-ml/p/MLM2099057579 | Same SPECTRAL / NANOXIDIL 5% product claim |
| 13 | Tongshan Xianpinwei Online (seller of "Sérum Densidad Capilar Spectral Labs Hombre No Graso 5pcs") | Mercado Libre México (MercadoLibre, Inc.) | https://www.mercadolibre.com.mx/sserum-densidad-capilar-spectral-labs-hombre-no-graso-5pcs/p/MLM2109699359 | Same SPECTRAL men's product claim |
| 14 | CNSDFER123456COR (seller of "Ydu T 2026 Sérum Spectral Dnc-n Para Hombre Tratamiento L") | Mercado Libre Colombia (MercadoLibre, Inc.) | https://www.mercadolibre.com.co/ydu-t-2026-serum-spectral-dnc-n-para-hombre-tratamiento-l/p/MCO2104742057 (item MCO2312297789) | Same SPECTRAL.DNC-N / NANOXIDIL 5% claim |

Contact identifiers used by Defendants Nos. 1–4: Tel. +1 813-322-6233; info@tryviareline.shop; 30 N Gould St, Ste N, Sheridan, WY 82801; "Biz #" 2025-001764542; tax ID 32-0827500. Email used for order confirmations: hello@godetica.com.

## SCHEDULE "B"
## SCHEDULE OF MEDITAGO HOLDINGS LLC TRADEMARKS

(Owner of record: Meditago Holdings LLC; exclusive licensee: DS Healthcare Group, Inc. Legacy registrations assigned to Meditago, assignment recorded April 3, 2020 (Reel/Frame 6909/0155); newer registrations filed in Meditago's name.)

### Part 1 — Counterfeit Mark (asserted under 15 U.S.C. §§ 1114, 1116(d), 1117(c))

| Mark | Reg. No. | Reg. Date | Class / Goods | Status |
|---|---|---|---|---|
| NANOXIDIL | 6,694,052 | Apr. 5, 2022 | Cl. 3 — non-medicated hair serums | Registered; live (not yet eligible for § 1065) |

### Part 2 — SPECTRAL Family of Marks (infringement / likelihood of confusion)

| Mark | Reg. No. | Reg. Date | Class / Goods | Status |
|---|---|---|---|---|
| SPECTRAL.DNC (lead) | 3,510,924 | Oct. 7, 2008 | Cl. 3 — hair-loss preparations | Registered; live; incontestable (§ 1065) |
| SPECTRAL.CSF | 6,545,498 | Nov. 2, 2021 | Cl. 3 — hair serums | Registered; live |
| SPECTRAL.UHP | 6,545,542 | Nov. 2, 2021 | Cl. 5 — medicated hair-loss preparations | Registered; live |
| SPECTRAL.F7 | 6,545,857 | Nov. 2, 2021 | Cl. 3 — hair serums | Registered; live |
| SPECTRAL.BRD | 6,153,296 | Sep. 15, 2020 | Cl. 3 — beard serum | Registered; live; incontestable (§ 1065) |
| SPECTRAL.BROW | 6,153,147 | Sep. 15, 2020 | Cl. 3 | Registered; live; incontestable (§ 1065) |
| SPECTRAL.LASH | 6,545,491 | Nov. 2, 2021 | Cl. 3 | Registered; live |
| SPECTRAL.CBD | 6,231,699 | Dec. 29, 2020 | Cl. 3 | Registered; live |

Note: No U.S. registration exists for SPECTRAL alone or SPECTRAL MEN'S; SPECTRAL is pleaded as the common element of the family of marks and through common-law use.

### Part 3 — House Marks

| Mark | Reg. No. | Reg. Date | Class / Goods | Status |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| DS LABORATORIES | 3,460,674 | Jul. 8, 2008 | Cl. 3 — non-medicated skin and hair care preparations | Registered; live; incontestable (§ 1065) |
| D S LABORATORIES (design) | 4,758,774 | Jun. 23, 2015 | Cl. 3 | Registered; live |
| Crown design | 4,022,680 | Sep. 6, 2011 | Cl. 3 — non-medicated hair care preparations | Registered; live; incontestable (§ 1065) |
| DS LABS | 5,200,746 | May 9, 2017 | Cl. 3 — shampoo; conditioner | Registered; live |
| DS LABS | 6,693,320 | Apr. 5, 2022 | Cl. 3 — non-medicated shampoos for hair loss prevention | Registered; live |
| REVITA | 3,518,989 | Oct. 21, 2008 | Cl. 3 — non-medicated shampoos to stimulate hair growth | Registered; live |